## IN THE UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

RECEIVED

2020 MAR -3  A 11: 34

DEBRA P. HACKETT. CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

CHRISTOPHER JAY GRISWOLD )
and KAREN SABRINA GRISWOLD )
as co-administrators and co-personal )
representatives of AUSTIN )
GRISWOLD'S estate, )

                          )

        Plaintiffs, )

                          )

v.                          )

ALABAMA POWER COMPANY )

                          )

        Defendant. )

Civil Action
File No. 2: 20-CU-149

**JURY TRIAL DEMANDED**

## COMPLAINT

COME NOW PLAINTIFFS, Christopher Jay Griswold and Karen Sabrina

Griswold, the co-administrators and co-personal representatives of their deceased

son's, Austin Griswold's, estate and respectfully show the Court the following facts:

### I.    PARTIES, JURISDICTION AND VENUE

1.

Plaintiffs are the co-administrators and co-personal representatives of their son's

estate. Plaintiffs are residents of the State of Georgia.

2.

Decedent was a resident of the State of Georgia.

1

3.

Defendant Alabama Power Company is an Alabama corporation with its principal place of business located at 600 North 18th Street, Birmingham, Alabama. Service of the Summons and Complaint may be served on Alabama Power's registered agent, Teresa G. Minor at 600 North 18th Street, Birmingham, Alabama 35203.

4.

There is complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy, exclusive of interests and costs, exceeds $75,000.00. Therefore, this Court has subject matter jurisdiction over the claims asserted herein according to 28 U.S.C. § 1332.

5.

This Court has personal jurisdiction over Defendant.

6.

Venue is proper under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## II.   STATEMENT OF FACTS

### A.   The November 16, 2018 Helicopter Crash

7.

David Hall was a pilot for the Metro Narcotics Task Force, which is a legal entity that includes law enforcement agencies associated with the City of Columbus,

2

Georgia; the City of Phenix City, Alabama; Russell County, Alabama; Muscogee County, Georgia; and Harris County, Georgia.

8.

On November 16, 2018, David Hall was the pilot in command of a Bell OH-58C helicopter bearing a tail number of N510CP ("the helicopter").

9.

The purpose of the flight was to transport the helicopter to the Chilton County Airport for maintenance associated with the helicopter's use by the Metro Narcotics Task Force.

10.

Austin Griswold was a passenger in the helicopter.

11.

Austin Griswold was also one of David Hall's student pilots.

12.

Around 11:30 a.m., central standard time, David Hall flew the helicopter into Alabama Power powerlines stretching across Lake Mitchell, near Clanton, Alabama.

13.

The helicopter crashed and sank in the Coosa River. *See*, Map where powerlines cross Lake Mitchell attached hereto as Exhibit A.

3

14.

The Alabama Power powerlines stretching across Lake Mitchell were unmarked to alert David Hall or Austin Griswold that there were powerlines stretching across the Coosa river.

15.

As a result of Alabama Power's failure to mark the powerlines, David Hall and Austin Griswold were killed in the helicopter crash. See, Pictures of the helicopter wreckage attached hereto as Exhibit B.

**B.    Alabama Power's Lake Mitchell.**

16.

In 1921 the Federal Power Commission granted Alabama Power Company a license to construct a dam across the Coosa River near Clanton, downstream from Lay Lake, at a location called Duncan's Riffle.

17.

The dam and lake are named for former Alabama Power Company President James Mitchell. Construction of Mitchell Dam, Alabama Power Company's second hydroelectric plant, was completed in 1923.

18.

Located on the Coosa River near Verbena, the dam straddles the Chilton and Coosa County line.

4

19.

Alabama Power powerlines cross Lake Mitchell without any markings. However, Alabama Power marks its powerlines to warn aircraft near Ware Island on Lake Mitchell. *See*, Picture Showing Marker Balls on Lake Mitchell attached hereto as Exhibit C.

## C.   Ware Island and Seaplanes on Lake Mitchell.

20.

Alabama Power is aware that airplanes have landed on Lake Mitchell for many years.

21.

There is a slough on Lake Mitchell named Big Airplane Slough where a landing strip for aircraft was once located.

22.

The landing strip was used by pilots to fly to Lake Mitchell.

23.

Alabama Power is aware that there is a landing strip and airport located on an island on Lake Mitchell.

24.

The airport located on Lake Mitchell is known as Ware Island with the airport code 01AL. *See*, Picture of Ware Island attached hereto as Exhibit D.

5

25.

Alabama Power marks the powerlines near Ware Island so that aircraft can see the nearly invisible powerlines located around Ware Island.

26.

Alabama Power is aware that pilots land aircraft on Lake Mitchell.

27.

Alabama Power is aware that pilots land aircraft on Ware Island.

28.

Alabama Power is aware that at least two residents on Lake Mitchell own float/sea planes and keep them on Lake Mitchell.

29.

In 1992, Alabama Power began issuing permits for all shoreline structures for each property along its shorelines, including the shorelines of Lake Mitchell. *See*, Alabama Power Shorelines Permit attached hereto as Exhibit E.

30.

In order to receive a permit from Alabama Power for shoreline structures, Alabama Power requires the owner to contact the local Alabama Power Company Shoreline Management Office prior to beginning any construction on or within Project Lands and/or waters.

6

31.

Alabama Power mandates that a written permit must be obtained from Alabama

Power Company before any construction begins.

32.

In order to receive a permit from Alabama Power for shoreline structures, the

land owner must meet with a representative of Alabama Power Company at the

proposed construction site to discuss and review the proposed work.

33.

In order to receive a permit from Alabama Power, the owner must complete a

"Request for Lakeshore Use Permit" and provide the following information to their

local Alabama Power Company Shoreline Management office:

(i) a signed copy of the guidelines, and

(ii) a copy of the current deed for the property or a copy of the lease if the
property is being leased, along with

(iii) any other necessary supporting documentation as determined and
required by Alabama Power Company.

34.

Alabama Power Company reviews the "Request for Lakeshore Use Permit" and

determines eligibility, the appropriate permit(s) for the proposed work, and whether a

retrofit or modification is required.

7

35.

Each time a property owner wishes to do any construction or maintenance to any structures along Lake Mitchell's shoreline, he/she must notify Alabama Power with details of the construction or maintenance plans and obtain a construction permit for those specific plans.

36.

Alabama Power makes it a priority to be intimately aware of, and to control, all construction and activities on Lake Mitchell.

37.

The Alabama Power Permit is a mere license for the specified use of Alabama Power Company property or easement and may be revoked at any time and for any reason in Alabama Power Company's sole discretion.

38.

Alabama Power issued permits to at least two residents on Lake Mitchell to build docks and/or ramps so that float/sea planes could be stored on Lake Mitchell. *See*, Pictures of floatplane and dock on Lake Mitchell attached hereto as Exhibit F.

39.

By approving the permits for ramps and/or docks to store float/sea planes, Alabama Power was aware that float/sea planes use Lake Mitchell as a runway to take-off and land aircraft.

8

40.

There have been numerous occasions where the airport on Lake Mitchell, Ware Island, has hosted "fly-in" events of vintage aircraft on Ware Island.

41.

Alabama Power is aware of these "fly-in" events.

42.

WaterWings Seaplanes offers flight lessons and training so that pilots can receive their seaplane rating. *See*, WaterWings advertisement with seaplane attached hereto as Exhibit G.

43.

WaterWings Seaplanes uses Lake Mitchell and other Alabama Power lakes to train pilots with seaplanes/floatplanes to receive their seaplane rating.

44.

Alabama Power is aware that WaterWings Seaplanes uses Lake Mitchell and other Alabama Power lakes to train pilots with seaplanes/floatplanes to receive their seaplane rating.

45.

WaterWings Seaplanes operates out of Shelby County Airport and often uses Lay Lake and Lake Mitchell to train pilots.

9

46.

One pilot who operates WaterWings Seaplanes describes Lay lake as having very good channel markings and being very friendly to seaplane traffic. The narrow nature of Lay lake limits the wind and waves which generally leads to good seaplane conditions.

47.

Just below the Lay Dam is Lake Mitchell.

48.

One pilot who operates WaterWings Seaplanes and often lands on Lake Mitchell describes Lake Mitchell as a pretty narrow lake, but the high rock sides make it a very scenic area to work in.

49.

This same pilot states that "there are a couple of **good examples of really tough to see power lines** that stretch across [Lake Mitchell]."

50.

Alabama Power advertises an article on its website titled "A Boat with Wings," which states that "lakes are a ready runway to adventure for floatplanes." *See*, Article Attached hereto as Exhibit H.

10

51.

The "A Boat with Wings" article on Alabama Power's website concludes that pilots "can and do hop across the country, **but their favorite places to land are the waterways of Alabama**."

52.

Alabama Power advertises on its website for pilots to land aircrafts on Alabama Power's lakes.

**D. Alabama Power's Failure to Warn of the Aerial Hazard of Powerlines even though Alabama Power is aware of other Collision.**

53.

There are no regulatory requirements for marking/lighting obstructions; rather, the Federal Aviation Administration ("FAA") has issued recommendations for marking/lighting.

54.

Many structures exist that significantly affect the safety of flying when operating below 500 feet above ground level, and particularly below 200 feet above ground level.

55.

Overhead transmission power lines and utility lines often span approaches to runways, natural flyways such as lakes, rivers, gorges, and canyons, and cross other landmarks pilots frequently follow such as highways, railroad tracks, etc.

11

56.

Power lines or the supporting structures of those lines may not always be readily visible and the wires are often virtually impossible to see.

57.

In some locations, the supporting structures of overhead power lines are equipped with unique sequence flashing light systems to indicate that there are wires between the structures.

58.

Most transmission/power lines do not appear on aeronautical charts.

59.

Pursuant to the FAA Advisory Circular No: 70/7460-1L, the height of a structure identified as an obstruction to air traffic was lowered from 500 feet above ground level (AGL) to 499 feet above ground level, by amendment to Title 14 Code of Federal Regulations (14 CFR) Part 77, Safe, Efficient Use, and Preservation of the Navigable Airspace (75 Federal Register 42303, July 21, 2010).

60.

Accordingly, all structures that are above 499 feet AGL are considered obstructions and the Federal Aviation Administration (FAA) studies them to determine their effect on the navigable airspace. This is meant to ensure that all usable airspace

12

at and above 500 feet AGL is addressed during an aeronautical study and that the airspace is protected from obstructions that may create a hazard to air navigation.

61.

The FAA recommends the guidelines and standards in Advisory Circular No: 70/7460-1L for determining the proper way to light and mark obstructions affecting navigable airspace.

62.

The Advisory Circular does not constitute a regulation and, in general, is not mandatory.

63.

However, a sponsor proposing any type of construction or alteration of a structure that may affect the National Airspace System (NAS) is required under the provisions of Title 14 Code of Federal Regulations to notify the FAA by completing a Notice of Proposed Construction or Alteration form (FAA Form 7460-1). According to the FAA, the guidelines may become mandatory as part of the FAA's determination and should be followed on a case-by-case basis, as required.

64.

Any temporary or permanent structure, including all appurtenances, that exceeds an overall height of 200 feet (61 m) above ground level (AGL) or exceeds any obstruction standard contained in 14 CFR Part 77 should be marked and/or lighted.

13

65.

The FAA may also recommend marking and/or lighting a structure that does not exceed 200 (61 m) feet AGL or 14 CFR Part 77 standards because of its particular location.

66.

Even though Alabama Power is well aware of the aircraft activity on and around Lake Mitchell, Alabama Power failed to take the incredibly inexpensive effort to mark utility/power lines crossing Lake Mitchell to make them visible and less dangerous to pilots.

67.

Transmission lines, power lines, and other such wires create a serious safety hazard to general aviation aircraft because transmission lines are virtually invisible to the pilot.

68.

Collisions with transmission or power lines are frequently disastrous to aircraft and those on board.

69.

An increasing number of aviation crashes involve collisions of general aircraft with utility and transmission lines.

14

70.

Unlike fixed-wing aircraft, there is no minimum altitude for helicopters, which are only required to fly "without hazard to persons or property on the surface."

71.

It was foreseeable that a plane or helicopter would fly at a low altitude over Lake Mitchell.

72.

Aircraft are used at widely varying altitudes for numerous purposes, such as wildlife and geological surveying, scouting, and recreational sightseeing.

73.

Alabama Power knew or should have known that its unmarked lines crossing Lake Mitchell posed a risk of harm to aircraft.

74.

Alabama Power could reasonably have foreseen the possibility of a line strike by an aircraft.

75.

Alabama Power is aware that on September 15, 2012, an amphibious airplane crashed in Weiss Lake after the airplane collided with unmarked Alabama Power powerlines that crossed Weiss Lake in Alabama.

15

76.

The powerlines were unmarked where they crossed Weiss Lake and were hard to see.

77.

The September 15, 2012 crash in Weiss Lake due to unmarked powerlines caused one fatality.

78.

Alabama Power is aware that on September 29, 2004, an airplane collided with power lines crossing the Coosa River while maneuvering in the vicinity of Gadsden, Alabama. The airplane was destroyed. The commercial pilot flight instructor and student pilot were fatally injured as a result of colliding with powerlines crossing the Coosa River that were unmarked.

79.

Power lines on both sides of the Coosa River were separated and were located in the river attached to the airplane and an electrical power transformer.

80.

The cost to Alabama Power to mark its powerlines crossing rivers and/or lakes is minimal as compared to the toll on human life resulting from wire strike accidents.

16

81.

Even though Alabama Power is aware that other airplanes have collided with unmarked powerlines crossing its lakes in Alabama and that airplanes routinely land on Lake Mitchell, Alabama Power failed to mark the powerlines crossing Lake Mitchell prior to Austin Griswold's death.

82.

In comparison to the benefit of saving a human life, the cost of adequate markers and warning on Alabama Power utility lines crossing rivers and lakes is negligible.

83.

Nearly 10 percent of wire strikes involving aircraft occur over rives and lakes, with most of the strikes occurring below 100 feet.

84.

In many cases where aircraft collide with power or utility lines, the wires are not visible to pilots until the last moment.

85.

Alabama Power is aware that other aircraft have crashed in Alabama due to collisions with unmarked Alabama Power utility and power lines.

## **COUNT I – Negligence and Wantonness – Wrongful Death**

86.

Plaintiffs incorporate by reference paragraphs 1-85.

87.

The purpose of Alabama's wrongful-death statute is the protection of human life and the prevention of homicides by wrongful act, omission, or negligence of persons or corporations.

88.

Alabama Power owed a duty to Austin Griswold.

89.

Alabama Power had a duty to mark the power lines crossing Lake Mitchell to warn of the danger.

90.

Marking the power lines crossing Lake Mitchell with marker balls would make it safer for aircraft flying around the lake.

91.

The power lines were in close proximity to an airport.

92.

The power lines and towers on either side of Lake Mitchell where the helicopter crashed were not in clear view and were hidden by trees. *See*, Pictures of Powerlines crossing Lake Mitchell hidden by trees attached hereto as Exhibit I.

18

93.

Alabama Power was aware that there was frequent air travel by small aircraft, including float/sea planes along the Coosa river and Lake Mitchell.

94.

Marking the power lines would have alerted the pilot of the helicopter to the existence of the power lines from a distance.

95.

The possibility of a wire strike involving Alabama Power's unmarked lines crossing Lake Mitchell posed, and continues to pose, a reasonably foreseeable risk of harm or death.

96.

Alabama Power is aware that aircraft land on, and takeoff from, Lake Mitchell.

97.

Alabama Power advertises Lake Mitchell as a recreational lake open to boaters, fisherman, and swimmers.

98.

Alabama Power is aware that boaters, fisherman, and/or swimmers could be injured in Lake Mitchell requiring emergency helicopter and/or aircraft rescue from the lake.

19

99.

Alabama Power is aware that there is an airport located on Ware Island on Lake Mitchell.

100.

An accident involving an aircraft and the power lines was foreseeable, and therefore, Alabama Power was under a duty to mark the power lines to warn of their danger.

101.

Alabama Power marked some of the utility and power lines around Ware Island on Lake Mitchell, but failed to mark other utility and power lines crossing Lake Mitchell.

102.

The Alabama Power powerlines that caused the November 2018 crash, and ultimately Austin Griswold's death, were unmarked.

103.

The Alabama Power powerlines crossing Lake Mitchell that caused the November 2018 crash, and ultimately Austin Griswold's death, were nearly invisible because they were unmarked. *See*, Pictures of Powerlines crossing Lake Mitchell attached hereto as Exhibit J.

20

104.

The November 2018 crash and Austin Griswold's death could have been avoided if Alabama Power would have marked the utility and/or powerlines crossing Lake Mitchell.

105.

Alabama Power negligently failed to mark the utility lines and/or powerlines crossing Lake Mitchell that caused the November 2018 crash.

106.

Alabama Power wantonly failed to mark the utility lines and/or powerlines crossing Lake Mitchell that caused the November 2018 crash.

107.

Due to all of the surrounding circumstances, including the fact that Alabama Power is aware that aircraft routinely land on Lake Mitchell, that Alabama Power advertises on its website for aircraft to land on its lakes, that an airport exists on an island on Lake Mitchell, that the towers carrying the powerlines were hidden by trees on either side of Lake Mitchell, and because of other known collisions with powerlines crossing Alabama Power's lakes, it was reasonably foreseeable to Alabama Power that an aircraft would collide with Alabama Power's powerlines crossing Lake Mitchell.

21

108.

Alabama Power chose to save money rather than mark the utility lines and/or powerlines crossing Lake Mitchell.

109.

Austin Griswold's death was caused by Alabama Power's negligent failure to mark its powerlines crossing Lake Mitchell.

110.

Austin Griswold's death was caused by Alabama Power's wanton decision to save money rather than mark its powerlines crossing Lake Mitchell even though Alabama Power knew that striking the powerlines was a foreseeable harm.

111.

Austin Griswold was not contributory negligent or negligent in any way whatsoever.

**WHEREFORE**, Plaintiffs demand judgment against the Defendant for damages as allowed under Alabama's Wrongful Death Act in an amount to be determined by a jury, together with interest from the date of injury, and the costs of this proceeding.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

Respectfully submitted, this 3rd day of March, 2020.

**CHARLES A. GOWER, P.C.**

Shaun P. O'Hara (O'H002)
Bar ID: 8152Q50F
shaun@cagower.com
Austin Gower
Georgia Bar No.: 303528
Austin@cagower.com
Charlie Gower
Georgia Bar No.:303500
Charlie@cagower.com
MIRANDA J. BRASH
Georgia Bar No. 475203
Miranda@cagower.com
1425 Wynnton Road
Post Office Box 5509 (mailing)
Columbus, Georgia 31906

1425 Wynnton Road
P. O. Box 5509
Columbus, GA  31906
(706) 324-5685

23