IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER JAY GRISWOLD and KAREN SABRINA GRISWOLD, as co-administrators and co-personal representatives of Austin Griswold's estate, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CASE NO. 2:20-CV-149-WKW [WO] |
| v. | ) ) | |
| ALABAMA POWER COMPANY, | ) ) | |
| Defendant. | ) | |
| MICHELLE DIAS, as personal representative of David Hall's estate, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:20-CV-924-WKW [WO] |
| ALABAMA POWER COMPANY, | ) ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

On November 16, 2018, David Hall was operating a helicopter over the Coosa River with Austin Griswold as his passenger when he hit unmarked power lines that stretched above and across the river. The power lines belong to Alabama Power Company ("Alabama Power"). Hall and Griswold perished in the crash, and this wrongful death suit is brought against Alabama Power by their respective estates

("Plaintiffs"). Plaintiffs each assert claims of negligence and wantonness under the Alabama Wrongful Death Statute, asserting that Alabama Power failed to adequately mark the power lines. The cases have been consolidated pursuant to Rule 42(a).

Before the court are Alabama Power's motions to dismiss. (*Griswold* Doc. # 31; *Dias* Doc. # 10.) In both motions, Alabama Power's sole argument is that Plaintiffs have failed to state a claim because they fail to allege a violation of a duty established under federal law. Specifically, Alabama Power argues that federal law in the field of aviation safety preempts duties of care under state tort law. Because the FAA has not set obstruction marking standards for constructions under two hundred feet tall, and because Plaintiffs do not allege that the lines were more than two hundred feet tall, Alabama Power argues that no violation of federal law is alleged in the complaints.

As discussed below, federal law does not preempt Alabama tort law in this area. Under Eleventh Circuit precedent and because of a lack of clear Congressional intent, field preemption is inapplicable to this case. Conflict preemption is inapplicable because Alabama Power has failed to demonstrate any conflict. Alabama Power's motion is therefore due to be dismissed.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is proper under 28 U.S.C. § 1332, as both decedents were Georgia residents, the representatives of their respective estates are

2

Georgia residents, Defendant is an Alabama corporation with its principal place of business in Alabama, and the amount in controversy exceeds seventy-five thousand dollars in both cases. The parties do not contest personal jurisdiction or venue.

## II. STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The well-pleaded factual allegations in the complaint, but not its legal conclusions, are presumed true. *Id.*

## III. DISCUSSION

The Supreme Court has identified three types of preemption: (1) express preemption; (2) field preemption; and (3) conflict preemption. *See Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1122 (11th Cir. 2004). "The critical question in any pre-emption analysis is always whether Congress intended that federal

regulation supersede state law." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369 (1986). A federal agency acting within the scope of its congressionally delegated authority may preempt state law by regulation. *Id.* (citing *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982)). There is an "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 471 (1996)).

The parties agree that no express preemption clause applies to this case. However, Alabama Power argues that both field preemption and conflict preemption are applicable.

### A. The Federal Regulatory Structure

The Federal Aviation Act ("Aviation Act") directs the Secretary of Transportation to conduct a study on potential obstructions to navigable airspace. *See* 49 U.S.C. § 44718(b)(1). The Secretary can require public notice of construction of a potential obstruction, *see id.* § 44718(a), but the Secretary "is not empowered to prohibit or limit proposed construction it deems dangerous to air navigation." *Aircraft Owners & Pilots Ass'n v. Fed. Aviation Admin.*, 600 F.2d 965, 967 (D.C. Cir. 1979).

Navigable airspace, as defined by 49 U.S.C. § 40102(a)(32) and 14 C.F.R. § 91.119, typically begins at five hundred feet above the ground. However,

helicopter operations and aircraft operations over water both have exceptions to this minimum altitude. *See* 14 C.F.R. §§ 91.119(c), 91.119(d)(1). And the FAA has not limited its regulatory authority to navigable airspace as defined in 14 C.F.R. § 91.119.

The Secretary has promulgated regulations regarding the identification and marking of aviation obstructions in 14 C.F.R. part 77. Part 77 identifies four purposes for its provisions: requiring notice to the FAA of the construction or alteration of potential obstructions; establishing standards for determining whether a particular construction is an obstruction to air navigation; setting a process for studying the potential obstructions; and establishing a review process for any determinations. *See id.* § 77.1. The regulations require notice be given to the FAA if a proposed construction will rise more than two hundred feet above the ground, if it is sufficiently close to a runway, if the FAA requests a notice, or if other limited conditions are met. *Id.* § 77.9. Once notice is given, the FAA evaluates the proposed construction to determine the effect on air navigation and the appropriate marking, lighting, or other measures to ameliorate any risk. *Id.* § 77.5(c).

For constructions not near airports or other special air routes, a construction that is five hundred feet tall or taller is automatically considered an obstruction. *Id.* § 77.17(a)(1). However, the FAA retains broad discretion in its recommendations. Part 77 cross-references "FAA Advisory Circular 70/7460–1, Obstruction Marking

and Lighting" as setting the full standard for obstruction marking and lighting. *Id.* § 77.5(c)(3). In the Advisory Circular, the FAA states the true breadth of its marking and lighting regulatory scheme:

> Any temporary or permanent structure, including all appurtenances, that exceeds any obstruction standard contained in 14 C.F.R. Part 77 or an overall height of 200 feet (60.96m) above ground level (AGL) should be marked and/or lighted. However, an FAA aeronautical study may reveal that the absence of marking and/or lighting will not impair aviation safety. Conversely, the object may present such an extraordinary hazard potential that higher standards may be recommended for increased conspicuity to ensure aviation safety. Recommendations for marking and/or lighting structures can vary, depending on terrain features, weather patterns, geographic location, number of structures, and overall design layout. The FAA may also recommend marking and/or lighting a structure that does not exceed 200 feet (60.96 m) AGL or 14 C.F.R. Part 77 standards because of its particular location.

FAA Advisory Circular 70/7460–1, Obstruction Marking and Lighting, ¶ 2.1. The Advisory Circular continues by describing a number of different marking, lighting, and painting methods that the FAA might recommend for increasing the visibility of a construction.

## B. <u>Field Preemption</u>

Field preemption can occur where the "scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). The preemptive effect of the Aviation Act is not a new question. The Eleventh Circuit

has laid out its approach in *Public Health Trust of Dade County v. Lake Aircraft, Inc.*, 992 F.2d 291 (11th Cir. 1993).

*Public Health* was a products liability case regarding an airplane seat. *Id.* at 292. The Eleventh Circuit relied on two features of the statute to conclude that federal law did not displace the manufacturer's duties under state tort law. First, the statute specifically required the Secretary to set "minimum" standards for air safety. *Id.* at 294. Second, the statute was amended twenty years after its enactment to include an express preemption clause, preempting state laws on matters of airline "rates, routes, or services." *Id.* at 295. The Eleventh Circuit held that the express preemption clause demonstrated congressional intent to not preempt any other area under the Aviation Act. *Id.* The court noted: "[W]here Congress has with words pre-empted some kinds of state lawmaking, courts are cautious about relying on implied pre-emption theories to limit state authority further." *Id.* at 294.

Alabama Power attempts to distinguish *Public Health* on two general bases: first, that *Public Health* relies on the later amendments to the Aviation Act, which do not apply to this case; and second, *Public Health* is a design defect case, where the present case is an "airspace management" case.

Alabama Power argues that a later statute cannot provide preemptive intent to a former statute, and thus the later express preemption clause should be disregarded when gauging Congress's intent to preempt via the former enactment. That is

7

certainly a good argument for the Eleventh Circuit to consider, but this court is bound by *Public Health*, which is indistinguishable in this regard. *See Ballenger v. Sikorsky Aircraft Corp.*, No. 2:09CV72-MHT, 2011 WL 5245209 at *2 (M.D. Ala. Nov. 3, 2011) (Thompson, J.) (discussing *Public Health* and deciding that "this court is bound by the . . . decision and should not forecast the overruling of precedent on mere speculation"). The relevant manufacturing regulations in *Public Health* were issued pursuant to statutory authority in the original Aviation Act, just the same as the regulations at issue here. The later amendments were inapplicable in *Public Health* case in the same way as this case. Nonetheless, the Eleventh Circuit held that the later express preemption clause defeated implied field preemption under the earlier enactment. Any weaknesses in the Eleventh Circuit's reasoning are not for this court to reconsider.

Alabama Power's attempt to make a distinction between design defect and "airspace management" cases falls short under *Public Health* as well. The Eleventh Circuit concluded by saying that "Congress did not intend to pre-empt state laws on matters unrelated to airline rates, routes, or services." 992 F.2d at 295. Thus, unless the subject matter falls within the express preemption clause, there is no congressional intent to preempt according to *Public Health*. Because Alabama Power agrees that the express preemption clause is inapplicable, no distinction in the subject matter could merit preemption.

Even if this court were to ignore the broad rule language of *Public Health* and cabin *Public Health* to its facts, Alabama Power's attempt to distinguish this case as an "airspace management" case is unhelpful. The markings on a fixed obstruction and the design characteristics of an aircraft both solely affect the *character* of an object that enters navigable airspace. Neither has a substantial effect on the movement of the object through airspace or otherwise affect management of the airspace itself. *Cf. Hoagland v. Town of Clear Lake*, 415 F.3d 693 (7th Cir. 2005) (holding that even the forced relocation of an airstrip was not preempted, despite the fact that it affected an air "route," broadly speaking).

The labelling of one case as design defect and the other as "airspace management" does not strike at the heart of the issue. Even if implied preemption were allowed under *Public Health*, this court would have to look to "the pervasiveness of federal regulations in the *specific area* covered by the tort claim or state law at issue." *Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc.*, 555 F.3d 806, 809 (9th Cir. 2009) (emphasis added); *see also Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 367 (3d Cir. 1999) ("[A]lthough the term 'field preemption' suggests a broad scope, the scope of a field deemed preempted by federal law may be narrowly defined.").

The regulatory structure for aircraft design discussed in *Public Health* is certainly distinguishable from the regulatory structure for obstruction marking at

9

issue here—the most notable difference being that the statute for aircraft design directs the Secretary to issue "minimum" standards. However, neither regulatory system is sufficiently pervasive to require field preemption.

Whether Alabama Power gave *notice* to the FAA is not at issue, and thus most of the regulatory language in Part 77 is irrelevant.[1] The issue here is whether Alabama Power breached an obstruction marking standard. 49 U.S.C. § 44718 does not set such a standard; Part 77 does not set a standard; and even the Advisory Circular does not set a standard. The federal statutory and regulatory structure simply lays out a system whereby the FAA can *recommend* obstruction markings. The regulations make it clear that the FAA could have asked for Alabama Power to provide notice for *any* construction and could have recommended lighting and marking for even the shortest constructions.

If Part 77 were taken as the standard of care in this case, the jury would be asked whether the FAA would have recommended obstruction markings and what markings the FAA would have recommended. This cannot be the appropriate

---

[1] Alabama Power's motion is based in large part on the premise that any structure under two hundred feet is not covered by the regulations and is therefore not subject to any marking requirements. However, the two-hundred-foot mark only generates a duty to inform the FAA. (And it is not the only way that such a duty can be generated—a request from the FAA could kick in the same requirements for smaller structures.)
A breach of the duty to *inform the FAA* is not the issue, but rather a breach of the duty to *mark the obstruction*—and the Advisory Circular confirms that the FAA could recommend markings for structures shorter than two hundred feet. Thus, the fact that the structure at issue in this case was shorter than two hundred feet is irrelevant to Plaintiff's claim under state law.

standard for Alabama Power's duty.  Compare this standard to the explicit standard given in *Abdullah*, where the court did find preemption: "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."  181 F.3d at 371 (quoting 14 C.F.R. § 91.13).  Unlike that standard, the standard in the obstruction regulations is advisory, unenforceable, and entirely dependent on the FAA's case-by-case determination.

Even if the regulatory structure did set a pervasive standard for the marking of *some* obstacles, the lack of direction regarding shorter obstacles does not show a clear lack of duty under state law.  If, for example, the power line was set so low over the water that it posed a danger to boaters, Alabama Power could not rely on Part 77 as "the standard" for determining whether obstructions should be marked.  The regulations do not demonstrate a clear intent to preempt state law regarding these surface-level torts, and the involvement of an aircraft in this particular incident does not change the fact that there is a gap in the regulations.

To the extent that *Public Health* does not foreclose Alabama Power's field preemption arguments, the court finds them unpersuasive.  The federal regulatory scheme of obstruction marking is not so pervasive as to preempt the duties under tort law.  *See Martin*, 555 F.3d at 809.

This conclusion conflicts with rulings of the Eastern District of Michigan and the District of South Dakota.  *See McMahon Helicopter Servs., Inc. v. United States*,

No. 04-74133, 2006 WL 2130625 (E.D. Mich. July 28, 2006); *see also Big Stone Broad., Inc. v. Lindbloom*, 161 F. Supp. 2d 1009 (D.S.D. 2001).[2] The opinions of other federal district courts are not binding but can be helpful to the extent they are persuasive. *McMahon*'s conclusion that "Part 77 establishes the standard of care" is simply not supported by the text of Part 77, which contains no standard of care. In keeping with the presumption against preemption, *see Wyeth*, 555 U.S. at 565, the court is not persuaded by these two cases and declines to follow them.

## C. **Conflict Preemption**

Alabama Power also argues that there would be a conflict between the federal regulatory scheme and a verdict against it under Alabama tort law. Alabama Power compares this case to passenger warning cases, such as *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380 (5th Cir. 2004). Alabama Power cites those cases for the proposition that "warnings by their nature conflict, in the sense that the import of one warning is diluted by additional warnings that might be imposed under state law." *Id.* at 385. In its reply, Alabama Power concludes with a similar point: "If there are fifty different standards for when objects in airspace will be marked (some starting, for example, at seventy feet, some at one-hundred and twenty, some at two-hundred,

---

[2] *Big Stone* may be better described as a conflict preemption case. The FAA found that the proposed tower was not a danger to air traffic, but the state agency found that it was. *See id.* at 1019. Although the case used terms of field preemption, it mostly discussed the effect of the FAA's actions in that case rather than the pervasiveness of the regulatory scheme as a whole.

12

*etc.*), this could lead to pilot confusion—especially during interstate flight operations." (Alabama Power Reply in *Dias* at 24.)

*Witty* and the other warning cases cited by Alabama Power are inapposite. Certainly, verbal warnings to airline passengers can be diluted by additional warnings, but that situation is entirely distinguishable from the present situation. Additional verbal warnings command the attention of airline passengers for a longer period of time, whereas a power line with state and federal markings could instead make the power line more visible and therefore require *less* of the pilot's attention than if just federal markings were present. There may be a situation where state-mandated markings are literally incompatible with federal requirements, but this is not that case. In this situation, there are *no* federally required warnings. There is nothing for the state warnings to dilute and nothing with which to conflict.

To the extent that Alabama Power worries that state warnings will detract from the federal warning system as a whole, *Witty* is no grounds for that argument. The attention span of a passenger is a limited resource, and a state should not be able to unilaterally command that resource. The visual warnings in this case, on the other hand, do not necessarily command the same limited attention resources. If every mountain and obstacle were marked and lit, pilots would simply scan for the lights and markings in their proximate area and ignore the ones that are farther away. Rather than forcing all passengers to listen to a warning on a rare disease, as in *Witty*,

the warnings contemplated here would command the attention of only those pilots who in fact need such a warning—the ones in the proximate airspace.

Alabama Power's final point on uniformity also misses the mark. Merely alleging that pilot confusion will result from a lack of uniformity does not demonstrate that preemption is the appropriate path forward. The best version of Alabama Power's argument is that pilots who are used to a seventy-foot marking requirement might be surprised when flying in an area with a two-hundred-foot marking requirement, but even this is unconvincing.

To start, the FAA's own regulatory structure *does not enforce uniformity*. The Advisory Circular authorizes the FAA to recommend a wide array of different markings for a wide variety of structures. The Advisory Circular does not draw a definite starting line at two hundred feet, nor does it uniformly require that all structures above five hundred feet be marked and lit. Even in a world where the FAA did issue uniform recommendations, true uniformity would be far more demanding. In the real world, all manners of billboards and banners shine lights and markings at pilots. *Voluntary* marking and lighting of structures for commercial, safety, or any number of other reasons is extremely common. Part 77, of course, makes no attempt to extinguish all non-uniform lights or to eliminate all non-uniform markings. Uniformity does not exist, and the regulations accept that.

In any event, Alabama Power's argument relies on the unsubstantiated contention that pilots pay attention to differences in obstruction marking heights and that they would be aided by uniformity. But common sense dictates that pilots would want to be more aware of their surroundings, not less. The value of marking more obstructions overshadows any minimal interest in uniformity.

## IV.  CONCLUSION

For the reasons stated above, it is ORDERED that Alabama Power's motions to dismiss (*Griswold* Doc. # 31; *Dias* Doc. # 10) are DENIED. Alabama Power's motion to stay discovery (Doc. # 43) is DENIED as moot. However, the deadline to file a Rule 26(f) report is EXTENDED to and including **January 18, 2022**.

DONE this 4th day of January, 2022.

                                                   /s/ W. Keith Watkins
                                    UNITED STATES DISTRICT JUDGE